Mr. Leschies. Leschies. Leschies. You may proceed. Thank you, Your Honors. Levy Leschies, representing Appellant Harold Pick. I will not be reserving any time. The court thankfully provided some guidance as to what the court is looking for today and I think it will be a challenge to go through all of that in 15 minutes. Prior to addressing the substantive issues, I'd just like to briefly point out a procedural issue relating to the record, which is the majority of claims in this case were eliminated on the First Amended Complaint and I'm just pointing that out because I think, you know, as we discuss these issues, most of the claims in this case have the benefit of looking at the allegations at the First Amended Complaint and the Second Amended Complaint, whereas there's only a very narrow claim that was left for consideration in the Second Amended Complaint and that perhaps is the only one which may be limited to certain portions of the record. With that introduction, I would like to address the first question posed by the court, which is whether the computer hard drive referred to by the parties as Drive 9 is a record within the meaning of the Privacy Act. There is, well, let me start by addressing UNT because UNT is circuit precedent. With respect to, if UNT is controlling on this court, which I believe it is not, then I think we would still, Harold Pick would still maintain that there is an estoppel issue and he is entitled to submit the question to the jury as to whether there was a characteristic of quality within the hard drives that were destroyed without notice to him. I don't think that a agency has the latitude or prerogative to destroy records without notice to the property owner in violation of the law. But I think that the antecedent question is, is it a record? And as I understand it, I mean, this is a piece of evidence that they seized, right, and so it's, you know, on a shelf somewhere and there's Drive 9 and next to it is, you know, a bag of meth and next to it is, you know, a Glock 17 and there's, you know, a bunch of stuff in there. And sure, you know, Drive 9, unlike some of the other items, you know, is a information storage device that has information in it and some of that is about him, but it still seems very odd to call that a record within a system of records given the way it's being stored. Yes, I understand, Your Honor, and I think the correct analysis over here is by looking at the actual statutory language because if you look, if one looks at, if Your Honor looks at Subdivision A4, I think it really sets out three elements. The first element is a, is that the, that there's an item collection of grouping of information about an individual, then that this item about an individual is maintained by an agency, and then thirdly, the, it, there needs to be something within the record about the individual. And I think over here all three elements are met and, and before I get to why all three elements have met, I think it's important to understand that the Drive 9 is actually kind of a, it has two, two, it exists in two dimensions. It exists in a dimension in the way that it exists within the evidence locker in the FBI storage unit, but then we were actually looking at the way this Drive 9 was furnished to a, to a district court together with an authenticating declaration, and I think ultimately, especially because the alleged violation is under E6 and E9, which focuses on whether the agency is acting with good faith, essentially, with respect to its obligations when sending information out the door, right, it really becomes very relevant to not look at just Drive 9, but the authentic, authenticating declaration that is handed to the district court along with Drive 9, which viewed in the totality of those two circumstances, the authenticating declaration with the item, I think that easily meets a definition. Right, but what is on Drive 9, though, did it contain information about an individual, or wasn't it, wasn't what was on Drive 9 several hundreds of versions of Microsoft software, which wasn't about any individual? So, Your Honor, it's explicitly in the record that, that it was, there was a forensic examiner which examined the Drive 9 and said, well, there's information here about Harold Pick, so we do, that is unquestionably in the record. Well, as I understood, and I'm trying to follow up with Judge Wardlaw's question, I looked at RB19, Drive 9 contained Pick's name and his business address, but that's the only thing I find there. Yes, Your Honor, and, and so that, look, and in fact, I mean, the worry that I have about this is that it seems to me that you've either got to allege that the document reflects some quality or characteristic about your client in order to be a record, or if you want to go the second circuit, you've got to allege that there is personal information about your client that's linked to your client through the record. I didn't find any of those allegations in your complaint or your second amended complaint, and then I tried to find anything in Drive 9, and that's why I came up with the idea that the best Drive 9 has is your client's name and address. Yes, Your Honor, and, and that is correct, and with respect to his name and address, that's ER52 paragraph 63, ER127 paragraph, paragraph 47. I think your, your Honor's analysis is correct, but I think what is critical here is looking at the language of A4 and, and recognizing that there are, there are three distinct elements, and the, and the, and the question as to whether the record is about an individual has a separate test as to whether there is identifying information about the individual, and so when you look at the first part of these, of A4, A4 references that when you're looking at whether the item is about an individual, it can be a grouping of items, right, which I think. It's talking about things like his education, financial transactions, medical history, and criminal or employment history, and then it says and contains his name, so here it seems like we have his name and his address, but nothing about anything like his background, his education, his medical history, criminal or employment history. Well, Your Honor, I would, I would submit that that's sufficient because we meet the first part of the test, which is that it's an item collection grouping of information about an individual. It's not. It's really a collection of Motorola software. Well, Your Honor, it's unauthorized Motorola software. Yes, but it's being collected as part of an investigation about Harold Pick. I mean, I guess to go back to the, you know, question I started with about the other items in the evidence locker, if, if they've seized a gun and, you know, it's a gun where somebody has, you know, engraved his name on the stock, is that then a record? Because like it's, it's part of their investigation of him and it has his name on it? I think, I think it would be, Your Honor, because the first question is why is, who's it being collected about? It's being collected about the investigatory subject. Then the second question is what identifying information does it have on it? And then, you know, it does say the person's name. And again, I think we... But it seems to me like you're arguing that all you got to have is the name. And if I look at record, that isn't what it says. It says, as Judge Wardlaw pointed out, any item collection or grouping information about the individual, then it tells all the many things that could be and then contains the name. So it isn't enough to have the name and address. Well, Your Honor, it... It had to be a record. I do think that meets the statutory language, but even... Okay, if that's your argument, I don't think that's correct. But even to the extent Your Honor is not inclined to accept it, at the end of the day, right, I think it really comes to the jury to go to determine, well, what, what did this hard drive contain, right? Because at the end of the day, this is, the agency destroyed the hard drive, right? So I think it's premature at the pleading stage to tell, tell the plaintiff, well, this, your property was destroyed and because now you have insufficient evidence to show that this was a record. Okay, if you could, I'd like to move to FD 302. FD 302 and, yes. And the reason I want to move there is that I frankly believe the statute of limitations has run, or at least it seems to have run, and I want you to talk about it. Thank you, Your Honor. To disabuse me of that crazy idea. Thank you, Your Honor. There are so many points with respect to the statute of limitations. Well, this is an interview form. Your client received a copy of this form in 2005, right? He would have known then that the document was inaccurate if it wasn't. When it gets to trial, he disagrees with the content of it, and now he wants me to suggest that there's some reason why the statute hasn't run. Thank you, Your Honor, and I think this really comes down to the case of OHA, which the so-called president, and understanding this distinction between E-5 and E-6 under the statute, which is all important due to 552A subdivision J. Under subdivision J, right, so under subdivision E-5, there's an obligation to have accurate, complete, timely records. Under E-6, there's a separate obligation which says before you send something out the door, you need to have some good-faith bona fide process to determine that this is something you should be sending out the door. And then finally, under E-9, there's an obligation to adopt processes. All the issues that Harold Pitt could have potentially have notice of in 2005 would have all been E-5 issues, which would be non-actionable. Under subdivision J, the agency can exempt itself from having, in turn, accurate records. And I think, you know, a really important point here, Your Honor, is under E-6, if you have an individual agent who's scribbling down false information in a FD-302, but the agency's unaware of it, right, and they're passing out, you know, they get a subpoena, they pass it out the door, there's no E-6 violation. The E-6 violation is when the agency pulls it out of the file and it has red flags all over it, but they cover it all up, right? And that is the E-6 violation. There's no way that Harold Pitt could have known these information beforehand. And there's really three particular components of the E-6 that are at issue with the FD-302 form, and none of these issues could have been known by Harold Pitt previously. First issue is relevance to agency purposes. There's no way that Harold Pitt could have known that the agency had no business or there was nothing incriminating on the drive. It's actually alleged in paragraph 77 through 78, 79 of the Second Amendment complaint. Those were facts that were learned after the initial filing in this case, right? I handled the FOIA case, and I remember being super frustrated with the government's releases because I thought, you know, the golden egg would be at the last release, and I thought they would, you know, the government was dragging it out. I remember the last release comes out, and it's like jaw-dropping. It's like the government has nothing, right? That's the point. That's the point in time when all the documents come out, and it's clear that the government has nothing on this person. That's when the first time Harold Pitt is able to say, hey, right, you know, the government should have given me back my property, right? It was with the outside the scope of the warrant, right? Why are they holding onto it and giving a copy to Motorola? So that's the issue of relevance. Then there's completeness, which is the TUHI authorization, an underlying case, was used as a sword and a shield in the sense that there was one potentially incriminating statement that Harold Pitt said in an interview, and that is given to Motorola in the trial, right? The real evidence that the government is sitting on is the fact that they turned over every stone in a 10-mile radius to Harold Pitt and found nothing. That is ultimately probably the biggest fact about the Harold Pitt investigation, the incredible witch hunt that happened, and they found nothing. Again, Harold Pitt has no idea until the FOIA releases that the government has used TUHI as a sword and a shield. And then there's the falsity issue, which is the fact that it's fraudulently backdated, right? There is no way, right? Not only is there no way he could know that, it's explicitly in the allegations that there was a direct question to the judge, sorry, a direct question to the authoring agent about that particular issue, and there was a factually inaccurate answer. And that immediately triggers the G5 tolling provision. Now I'm almost out of time. The one thing I also want to just point out as a practical matter, right, is just given the problem with the way the FOIA releases were handled, I think it's perfectly appropriate to have just a blanket rule that when there's a question of bad faith with respect to FOIA releases, that tolls a Privacy Act claim. Because there's a practical reality, I'm saying as a lawyer, when somebody comes in and says the government, the government, the government, you know, I'm not going to go running and filing a complaint. But what evidence, or what do you allege that even if the document was backdated, that it caused a serious injustice, like? Oh, well, I'm saying, that is actually explained in the Weddick Declaration, I think it's in your paragraph 62, but I'll try to get that exact site. The power of an FD302, the reason why the government creates it, part of it is that, you know, that people can refresh their recollection, but the other part is, it gives validity to what an agent is saying. If an agent is saying, you know, I wrote this down contemporaneously, and this is what Harold Pick told me at the time, that has, and in the first amendment complaint, it's alleged how Harold Pick was asked to understand, well, was the FBI agent lying when he said that? And Harold Pick says, yes, right? So, and then the reality is, it turns out, well, if the jury is told, well, you know what, he spoke to, you know, he spoke to... But I mean, why is that even relevant to his criminal case when he admitted that he possessed Motorella's copyrighted software, and the chain of custody of Drive 9 was supported by a different FBI declaration? So, even if there was a backdating, which we don't know for sure if there was, but even if there was, how did it affect the outcome of the trial? Very simply, Your Honor, and this is alleged extensively in the second amendment complaint. These pieces of software were generally old, antiquated, worthless pieces of software. We're talking about MS-DOS, right? And Motorella never sought actual damages because this was effectively worthless software, right? Motorella went to trial on the theory that Harold Pick is using our software to program radios for commercial purposes. He's pirating our software and making a profit. The only evidence the government had to, the Motorella had to support that is Vandersteen's statement that I interviewed Mr. Harold Pick on February 6, 2005, and Harold Pick tells me that I've been programming hundreds of radios to sell to customers using Motorella software. And the excerpts that are cited in the first amendment complaint, that's actually from the closing, that's the closing essentially of trial, if I remember correctly. Motorella's closing statement to the jury when they're presenting the evidence, they're press examining Harold Pick, they're saying, you told the FBI agent, right, that you programmed hundreds of radios using our pirated software. And he says, no, I never said that, right? Turns out the agent authored an FD302 contemporaneously within a week, which doesn't have that statement, right? And then he authors, 18 months later, another FD302, which adds that statement, and the jury's never told that. And okay, counsel, you're well over your time, thank you. Thank you for answering that. Thank you very much for your time, all your honors. Thank you. Good morning, your honors. May it please the court. Assistant United States Attorney, Paul La Scala, on behalf of the Pelley, the United States Department of Justice. Unless the court has a preference, I'd like to start with number four in the focus order, which is the statute of limitations. It seems to be the strongest, or it is the strongest argument, I think, for the government, and it would effectively address all of the claims in the various pleadings, both the first and the second. Including drive nine? Including drive nine. Okay. I was going to say, make sure it includes drive nine. Will do. With what you're arguing, because that's important. I will, your honor. And of course, I'm always happy to field the questions, but let me see if I can offer a little background. In order to organize my argument, essentially what I've done is I've broken it up. First amended complaint with regard to drive nine, first amended complaint with regard to the FD302, and then I did the same thing with regard to the second amended complaint, just so that we can be completely thorough. The other thing is, just for sake of terminology, there are two civil remedies for damages under the Privacy Act. That's 5 U.S.C. 552A G1C, and I'm going to try to call that a failure to maintain provision instead of G1C. And there's the catch-all provision under G1D, and I have a tendency to call that the catch-all provision, just so that we're clear. Because both, of course, get implicated in the pleadings here. And of course, as background, according to Rose v. United States, the statute of limitations commences when the person knows or has a reason to know of the alleged violation. So starting with the first amended complaint as it pertains to drive nine, PICC alleged that the government improperly provided and authenticated drive nine. Based on those allegations, PICC alleged a violation of E9 under the catch-all provision on the ground that providing drive nine violated two E regulations when Special Agent Vandersteen provided misleading declarations about the authenticity of drive nine. Also, based on those allegations that the government improperly provided and authenticated drive nine, PICC alleged a violation under E6 under a failure to maintain provision, G1C, on the ground that due care should have been taken to ensure that the released information was truthful. These alleged violations were not would have occurred in 2004, when the government provided drive nine to Motorola, and in 2005, when Special Agent Vandersteen allegedly provided a misleading authenticating declaration. As the owner and operator of drive nine, who had possession of it in 2004, just prior to the search and seizure, PICC would have immediately known that during the Motorola litigation in 2004 and 2005, if Motorola was attempting to use an altered copy of drive nine in some way, and he should have filed suit at the latest, 2007. Going to the First Amendment complaint with regard to the FD-302 claims, as it pertains to FD-302, PICC only alleged the improper provision of an inaccurate FD-302 in violation of subsection E6 under a failure to maintain claim on the ground that due care should have been taken to ensure that the released information was truthful. PICC alleged in his First Amendment complaint that the, and Judge Smith already alluded to this, but that the FBI furnished a copy of FD-302 to PICC in response to a TUI request in connection with the Motorola litigation back in 2004. And that Special Agent Vandersteen was deposed over the FD-302 at that time. PICC would have immediately known at that time if the FD-302 was untruthful. He should have filed suit by no later than 2006 at the latest. There can be no tolling of the statute of limitations based on speculative allegations that Special Agent Vandersteen backdated the FD-302. The FBI was under no obligation to disclose when the FD-302 was prepared or handed to FBI rotor clerk, and PICC has offered no explanation as to how an alleged misrepresentation of a date of the FD-302 is material to establishing failure to maintain liability. Given that PICC never alleges that the FD-302 was presented to the jury, or that the jury even relied on it in rendering its verdict. Instead, throughout the First Amendment complaint, PICC makes very clear it was Vandersteen's testimony, rogue testimony, apparently, according to him, that resulted in the verdict. The FD-302 has nothing to do with that. Arguably, if a Special Agent Vandersteen wanted to doctor the FD-302, he still, it was still the testimony that he was providing. It was not this record that would have been the cause of any verdict. And as Judge Wardlaw already mentioned, there was already some admissions by PICC during the trial that make it implausible that he can proceed in this case. Just another point on FD-302 with regard to the First Amendment complaint. The government raised the statute of limitations issue in its motion to dismiss the First Amendment complaint, and PICC did not oppose it. The district court acknowledged that, that there was a failure to address that claim, and that's at ER-31. Right. So PICC has waived its claim under Doe v. Garland. If it's all right, I'll move on to the Second Amendment complaint, unless there are any questions about the First Amendment complaint. Yes, we'll move on to the Second Amendment complaint. Thank you, Your Honor. As it pertains to Drive 9, PICC alleges failure to maintain and the catch-all provision both, based on an alleged violation of E-9 for willfully or intentionally failing to implement rules of conduct of TUI officers, or failing to train or instruct TUI officers regarding compliance of E-6. As Mr. Lesh has explained, E-6 has to do with the dissemination or making sure prior to dissemination that the records are accurate, relevant, etc. PICC also alleged as to Drive 9 in the Second Amendment complaint, a failure to maintain claim based on an alleged violation of E-6, because due care should have been taken to ensure that the released information was relevant to agency purposes. And I may have misspoke, just so I'm clear. There was failure to maintain and catch-all claims based on E-9, and then a failure to maintain claim based on E-6, so I apologize if I misspoke on that. If PICC truly thought that Drive 9 was not relevant to the FBI's investigation at all, she would have known that in 2004 when the FBI seized Drive 9, and according to Rose, that's when the violation would have commenced and the statute of limitations, or the violation would have occurred and the statute of limitations would have commenced. But in any event, during the Motorola litigation in 2005, PICC knew the FBI held Drive 9 and provided it to Motorola. If he did not think a criminal investigation was pending at that time, which is contrary to other allegations, and he thought Drive 9 was no longer relevant because he thought there was nothing on there that the FBI could use, arguably, or not even arguably, that's when the statute of limitations would have commenced under Rose. The truth is that PICC knew the criminal investigation was pending against him until at least 2006. He alleges as much at ER 71, paragraph 159. And because the Motorola verdict had been rendered in 2005, PICC could not establish that holding on to Drive 9 was not relevant at the time of the verdict. As to the Second Amendment complaint with regard to FD. My worry about the statute of limitations as it relates to Drive 9 claims is that I'm not sure that PICC's claim that the Department of Justice improperly maintained Drive 9 with no investigatory purpose is time-barred. At the, as PICC alleges, the criminal investigation was pending at least until 2006. It's not to say that they ultimately charged him because they did not, according to the  But at that time, and during that time, it would have been, Drive 9 absolutely was relevant to the criminal investigation at that time. Does that answer your question, Your Honor? Well, one of the claims is that the department improperly maintained Drive 9 with no investigatory purpose. And that claim, I worry, is not time-barred. So Your Honor, I think under E6 or E5, it's not just failure to maintain. It's failure to maintain as to accuracy, relevancy, completeness, or timeliness. And the argument that has been made is, one, that Drive 9 is not accurate. I'm not sure how that plays in. If it was not accurate, then PICC would have known that during the Motorola litigation when Drive 9 was at issue. And with regard to relevancy, again, at the time of the Motorola litigation in 2004-2005, it was definitely relevant under PICC's own allegations that he knew the criminal investigation was pending against him until at least 2006. I thought one of his allegations was that after that point, when it was no longer relevant, I mean, at that point, it was relevant to the investigation, but that there was some time later when it was no longer relevant to an investigation and they nonetheless held on to it, and that was improper. And that claim, I mean, you may have merits arguments about that claim, but that claim would seem to have arisen and maybe continued, you know, sort of a continuing violation for some later period of time. Thank you for better explaining what I was after. I see, from my perspective and how I'm reading the pleadings, the damage here, the injury, is the verdict from Motorola. I'm not seeing allegations that he's pursuing any other sort of actual damages after that period in time. So that perhaps was a misreading on my part. I've gone through the pleadings several times and I haven't, I didn't, I didn't recognize that if that's the point, Your Honor. Going back to, I think I've covered, but on the Second Amendment complaint with regard to FD-302, the allegation there is a distribution of irrelevant records to Motorola in violation of E-6 under a failure to maintain claim. I interpreted that to mean that it included the FD-302. And the allegation there is that at the time of furnishing such evidence to Motorola and at the time of engaging in TUI authorizations, due care should have been taken to ensure that the released information was relevant to agency purposes. And so for the same reasons, if Pick truly thought that the FD-302 was not relevant to the FBI's investigation at all, he would have known that during the Motorola litigation in 2004 and 2005 when the government furnished a copy of the FD-302 to plaintiff. And again, the truth is that Pick knew the criminal investigation was pending against him until at least 2006, and because the Motorola verdict, which is the damages that I'm understanding here, had been rendered in 2005, Pick cannot establish that the FD-302 was not relevant at the time of the verdict. I'm happy to... But where are you finding that the only damages were the Motorola verdict? That is... The only injury, rather. Is that in the second amendment, amended complaint? I'm actually looking first at the first amendment complaint. I don't see how the first amendment complaint is actually relevant. Okay. Then I can move to the second amendment complaint. The second amendment complaint under the failure to maintain claim at ER-146 states that the damages are at least $2.4 million plus fees and costs. That's the... That ties in with the jury verdict from the Motorola case. Oh, that's... So you're... Paragraph 13? Yes. I'm sorry. Paragraph 13, Your Honor. And I think... Yes. And the same can be said even with the second amendment complaint with regard to the catch-all provision or catch-all claim. If Your Honor were to look at... It actually is on ER-145, paragraph 12. Again, the references damages there is the $2.4 million, which tracks with the Motorola verdict. Okay. Now, let me just... Do you have an answer to the issue of whether Drive 9 is a record under the Privacy Act? Yes, Your Honor. It's not much different than what I was gleaning from Your Honor's discussion with Mr. Lesch's. So to answer the question directly, Drive 9 is not a record under the Privacy Act. PIC and the government agree that the statutory definition of a record under Section A... Subsection A-4 concerns the contents of the record. The Ninth Circuit, as has already been discussed, held that to be a record under the Privacy Act, the contents must reflect some quality or characteristic about the individual involved. And this makes sense because under what I understand Congress's intent, their finding in support of enacting the Privacy Act, was that they were concerned about the privacy of an individual being directly affected by the collection, maintenance, use, and dissemination of personal information by federal agencies. Here, as has already been discussed, Drive 9 itself, for Drive 9 itself to be a record, it must be an item, collection, or grouping of personal information about PIC. In the first and second amended complaints, Drive 9 is described as containing business records and unauthorized versions of Motorola software. In the appellant's opening brief, PIC referred to Drive 9 generally when he stated that the FBI invited Motorola personnel to examine the hard drives and other equipment seized from PIC's business. And even in the proposed third amended complaint, we got a sneak peek into that, of course, it was included in the record, PIC alleges that Drive 9 contains his name and his business address, nothing else. All right, did you have a question? No. No, okay. Thank you, you're over your time. PIC versus DOJ will be submitted, Palanin versus Mercedes-Benz has been submitted, and this session of the court is adjourned for today. Thank you very much, counsel. All rise. Thank you very much for your argument, both of you. This court for this session stands adjourned.
judges: WARDLAW, SMITH, MILLER